O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-07248 ODW (Ex) | Date | December 1, 2009 |
|---|---|---|---|
| Title | Kent T. Ochiai, DDS v. Regents of University of California, et al. | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | | |
|---|---|---|---|
| Raymond Neal | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (IN CHAMBERS):** Order Re Defendants' Motion for Judgment on the Pleadings Pursuant to Rule 12(c) [8, 9]

## I.    INTRODUCTION

On July 16, 2009, Kent T. Ochiai, DDS ("Plaintiff" or "Ochiai") filed his Complaint against the Regents of the University of California (the "Regents"), Kang Eric Ting ("Ting"), and No Hee Park ("Park") (collectively, "Defendants") in Los Angeles Superior Court.[1] Plaintiff's Complaint asserts claims for (1) violation of civil rights under 42 U.S.C. § 1983, (2) breach of employment contract/constructive termination, (3) wrongful discharge, (4) promissory fraud, and (5) violation of FEHA. Defendants removed the action to this Court on October 5, 2009 based on federal question jurisdiction.

Presently before the Court is Defendants' Motion for Judgment on the Pleadings Pursuant to Rule 12(c). Defendants contend they are entitled to judgment on Plaintiff's second, third, and fourth claims against the Regents based on, among other things, statutory immunity. As to Plaintiff's fourth and fifth claims against Park and Ting, Defendants contend these claims fail because such claims cannot be maintained against individual employees. As to Plaintiff's remaining claims against Park, Defendants contend the Complaint lacks factual allegations of alleged wrongful conduct by Park. For the following reasons, the Court **GRANTS** Defendants' Motion.

## II.   FACTUAL BACKGROUND

---

[1] Plaintiff also sued Thomas Bales ("Bales"). However, Bales did not join in the current Motion.

Plaintiff alleges the following facts:

Plaintiff is a Doctor of Dental Surgery "licensed by the State of California since 1987 and is of Japanese ancestry." (Compl. ¶ 9.) In 2006, Plaintiff became interested in expanding his practice to include prosthetic orthodontics, which requires additional post-doctoral training and certification. (Compl. ¶ 10.) As a result, Plaintiff applied to the post-doctoral orthodontic residency program ("Program") at the UCLA School of Dentistry. (Id.)

On November 3, 2006, Ting, Chairman of the UCLA Dental School Orthodontics Section, notified Plaintiff by telephone that he had been admitted into the Program at UCLA and he would receive written confirmation of the offer of admittance within a few days. (Compl. ¶ 11.) Plaintiff accepted the offer by telephone that evening. (Id.)

On November 4, 2006, before Plaintiff received written confirmation of admittance, Bales, UCLA's Alumni Admissions Chairman, called Plaintiff and requested a $61,000 donation from him to UCLA Dental School's "Junior Faculty Development Fund" ("Fund") in order to "'guarantee his acceptance and to allay the reluctance of several members of the admissions committee had about his acceptance.'" (Compl. ¶ 12.) Plaintiff alleges Bales also told him that "because he 'was already a successful prosthodontist, was over forty years old, and because he is Japanese he should understand the importance of gift giving.'" (Id.) Based on Bales's call to him, Plaintiff believed that his admission to the Program was conditioned upon his payment of $61,000 to the Fund. (Id.)

On November 5, 2006, Plaintiff spoke with Dr. Michael McDonald ("Dr. McDonald"), a past UCLA Dental School admissions committee member and active alumnus, to inquire into whether UCLA had a formal policy of conditioning admission into the Program upon making a donation to the Fund. (Compl. ¶ 13.) On November 7, 2006, Ting and Bales admitted to Dr. McDonald, over the phone, that a preferential legacy program at the UCLA Dental School was created because California could not properly fund the Orthodontics clinic and the "legacy" program furnished the additional needed funding. (Compl. ¶ 14.) Dr. McDonald later confirmed with Dr. John Buemer that under the "legacy" program, several candidates who otherwise did not meet the admissions criteria had been admitted after the candidates or their relatives donated over $100,000 to UCLA's School of Dentistry. (Id.) Dr. McDonald later relayed this information to Plaintiff. (Id.)

"Based upon the information Plaintiff learned from Dr. McDonald's investigation, Plaintiff thereafter refused to pay the $61,000 donation demanded by Bales." (Compl. ¶ 15.) Plaintiff believes that "solely as a result of the investigation conducted by Dr. McDonald, he finally received written confirmation of his admission into the Program on November 16, 2007. (Id.) Thereafter, Plaintiff matriculated in the Program and became a resident-employee of the Program. (Id.)

On November 13, 2007, Robert Faturechi ("Faturechi") wrote an article that was published in the UCLA Daily Bruin newspaper, which exposed the secret preferential "legacy" admissions program based on information provided by several individuals, including Dr. McDonald. (Compl. ¶ 16.) Faturechi contacted Plaintiff regarding the secret preferential "legacy" admissions program. (Id.) Plaintiff truthfully answered Faturechi's questions regarding

his experience with Drs. Ting and Bales and their monetary solicitations of Plaintiff. (Id.)

"Shortly after the Daily Bruin published the article, Ting began a pattern and practice of retribution and retaliation against Plaintiff which were intended to and did ultimately have the effect, of creating a hostile and intolerable work and learning environment, for the purposes of driving Plaintiff out of the Program and forcing his resignation." (Compl. ¶ 17.) Plaintiff alleges that after he complained to the Program's administration regarding Ting's conduct, Ting and the other named defendants intensified their retributive and retaliatory conduct against him. (Compl. ¶ 18.)

As a result of Defendants' conduct, on February 21, 2008, Plaintiff announced his intention to resign effective March 1, 2008. (Compl. ¶ 19.) Thereafter, Defendants "falsely contrived and fabricated a plan to discredit Plaintiff by asking him to delay his decision for 'a few days' and then fabricated a false claim of alleged plagiarism against Plaintiff arising from Plaintiff's reliance during a powerpoint presentation upon openly public, existing research in the form of tissue slides which had been used in prior studies, which had been supplied to Plaintiff by his Second year resident advisor, as support for a new stem cell thesis application, and . . . which . . . Plaintiff had never claimed to be his original work." (Compl. ¶ 20.) Plaintiff eventually "quit and resigned the Program under duress on March 3, 2008." (Compl. ¶ 21.)

Plaintiff sued Defendants on July 16, 2009.

## III.  JUDICIAL STANDARD

A party may move for judgment on the pleadings after the pleadings are closed but early enough not to delay trial. Fed. R. Civ. P. 12(c). When a Rule 12(c) motion challenges the sufficiency of the pleadings, the standard for such a motion is similar to the standard for a Rule 12(b)(6) motion in that judgment on the pleadings is appropriate when, even if all the allegations in the complaint are true, the moving party is entitled to judgment as a matter of law. *Milne ex rel. Coyne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005). In such cases, the court assumes the allegations in the complaint are true and construes those allegations in the light most favorable to the plaintiff. *McGlinchey v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Conclusory allegations, however, without more are insufficient to defeat a Rule 12(c) motion. *Id.*

## IV.  DISCUSSION

Defendants seek judgment on the pleadings on (1) Plaintiff's second, third, and fourth claims against the Regents, (2) Plaintiff's fourth and fifth claims against Ting and Park, and (3) all of Plaintiff's remaining claims against Park. For the following reasons, the Court **GRANTS** Defendants' Motion.

In his Opposition, Plaintiff concedes that his second, third, and fourth claims against the Regents and his fifth claim against Ting and Park fail. (Opp. 2-3.) Thus, the Court **GRANTS**

Defendants' Motion as to these claims.[2]

As to Plaintiff's second and third claims against Ting, Park, and Bales, although in his Opposition, Plaintiff concedes that these claims fail (Opp. 2-3), Defendants did not actually move to dismiss these claims against these defendants. While the Court appreciates Plaintiff's candor, given that these claims are not currently at issue, in order to dismiss these claims, Plaintiff must seek dismissal using the proper procedural mechanism under Federal Rule of Civil Procedure Rule 41(a).

As to Plaintiff's fourth claim for promissory fraud against Ting and Park, Defendants contend this claim fails because this type of claim has not been recognized against individual defendants. Specifically, Defendants contend that promissory fraud has been recognized against employers who mislead an employee to leave a position to take another job, but has not been recognized against individual employees who may have had communications with an employee regarding a new job. *See Lazar v. Superior Court (Rykoff-Sexton, Inc.)*, 12 Cal. 4th 631, 638-39 (1996). Plaintiff has not cited any binding authority, nor presented any compelling arguments, to the contrary. Thus, the Court **GRANTS** Defendants' Motion as to this claim.

As to Plaintiff's remaining claims against Park, Defendants contend the Court should dismiss such claims because the Complaint lacks factual allegations of any wrongdoing by Park. In his Opposition, Plaintiff contends that there are sufficient allegations against Park because "all of the Causes of Action pleaded . . . against 'All Defendants' necessarily include and apply to Defendant Park equally as to the other Defendants." (Opp. 6.) Plaintiff seems to miss the point. Defendant has correctly pointed out that his Complaint lacks any factual allegations regarding Park. In fact, the only time that Plaintiff mentions Park in his Complaint is in Paragraph 3, where he merely states that Park resides in the City and County of Los Angeles. (Compl. ¶ 3.) From the face of the Complaint, the Court cannot discern Park's role in the alleged misconduct nor if Park even engaged in any alleged misconduct. As a result, the Court **GRANTS** Defendants' Motion as to Plaintiff's remaining claims against Park.[3]

---

[2] To the extent Plaintiff seeks leave to amend these claims, the Court denies Plaintiff's request at this time because, under the circumstances and in light of Plaintiff's consent to the dismissal of these claims, Plaintiff should formally request leave to amend his Complaint. *See* Fed. R. Civ. P. 15; C.D. Cal. Local Rule 15-1.

[3] To the extent Plaintiff contends his allegation that Park is "liable under respondeat superior and agency principles for the conduct of, and along with, all of the other Defendants" (Opp. 6) is sufficient, Plaintiff is mistaken because he has not actually alleged any facts supporting liability under these theories.

## V.      CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion. Given the current status of the pleadings, the Court will re-set the scheduling conference for a later date.

**IT IS SO ORDERED**.

|  |  |  |
|---|---|---|
|  | -- : | 00 |
| Initials of Preparer | RGN |  |